UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SONIA H.,[1] | ) |
| | ) No. 19 CV 2956 |
| Plaintiff, | ) |
| | ) |
| v. | ) Magistrate Judge Young B. Kim |
| | ) |
| ANDREW M. SAUL, Commissioner of | ) |
| Social Security, | ) |
| | ) April 15, 2021 |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Sonia H. seeks supplemental security income ("SSI") based on her claim that she is disabled by a combination of depression, anxiety, post-traumatic stress disorder ("PTSD"), and obsessive-compulsive disorder ("OCD"). In this lawsuit Sonia seeks judicial review of the Commissioner of Social Security's decision denying her SSI application. *See* 42 U.S.C. § 405(g). Before the court are the parties' cross-motions for summary judgment. For the following reasons, Sonia's motion is granted, the Commissioner's is denied, and the case is remanded for further proceedings:

**Procedural History**

Sonia applied for SSI in November 2014, claiming that she became disabled on June 1, 2014, when she was 45 years old. (Administrative Record ("A.R.") 166.) After her SSI application was denied initially and upon reconsideration, (id. at 71,

---

[1] Pursuant to Internal Operating Procedure 22, the court will use only the claimant's first name and last initial throughout this opinion to protect her privacy to the extent possible.

93), Sonia sought and received a hearing before an administrative law judge ("ALJ"). Sonia appeared and testified at the administrative hearing, along with a friend who submitted testimony in support of her claim and a vocational expert ("VE"). (Id. at 32-57.) Following the hearing, the ALJ issued a decision concluding that Sonia is not disabled. (Id. at 17-26.) The Appeals Council denied Sonia's request for review, (id. at 1-3), making the ALJ's decision the final decision of the Commissioner, *see Prater v. Saul*, 947 F.3d 479, 481 (7th Cir. 2020). Sonia then filed this lawsuit seeking judicial review of the Commissioner's decision, and the parties consented to this court's jurisdiction. (R. 7); *see* 28 U.S.C. § 636(c).

## The ALJ's Decision

The ALJ applied the standard five-step sequence in assessing Sonia's SSI claim. *See* 20 C.F.R. § 416.920(a). At step one the ALJ found that Sonia has not engaged in substantial gainful activity since her application date, and at step two the ALJ determined that she has severe impairments including back disorder, major depressive disorder, panic disorder, opiate dependence disorder, personality disorder, and PTSD. (A.R. 19.)

At step three the ALJ applied the paragraph B criteria to determine whether Sonia's mental health impairments are of listings-level severity. She assigned Sonia moderate limitations in social interactions, noting on the one hand that she maintained relationships with family and friends, but on the other that she had alleged significant social anxiety and self-isolation and examining clinicians had noted her behavior to be "somewhat bizarre." (Id. at 20.) With respect to

2

concentration, persistence, or pace ("CPP"), the ALJ assigned mild limitations, noting that although Sonia states that she can pay attention for only a few minutes and struggles to finish her tasks, the fact that she spends time reading, watching television, and caring for her grandchildren supports a greater ability to concentrate than Sonia describes. (Id.) After concluding that Sonia does not have two marked or one extreme limitation in the paragraph B criteria, the ALJ determined that Sonia's mental health impairments do not meet or functionally equal any listing. (Id.)

Before turning to steps four and five, the ALJ determined that Sonia has the residual functional capacity ("RFC") to perform light work "except with only occasional ability to work with others without being distracted and only occasional interaction with the public." (Id. at 21.) In explaining this determination, the ALJ acknowledged the evidence that Sonia experiences panic attacks, self-isolates in her room, struggles with compulsions to clean incessantly, and has difficulty leaving her home because of her fear of germs. But the ALJ found that Sonia's description of the severity of her symptoms was less than credible based on her sparse treatment record and her daily activities, which include reading and watching television, caring for her two grandchildren, and seeking to become a paid caregiver for her aunt. (Id. at 23.)

The ALJ further noted that she had given only "little weight" to the opinions of an examining psychologist, Dr. Catherine Kieffer, and an examining psychiatrist, Dr. John Franklin. Dr. Kieffer opined after examining Sonia that she demonstrated

3

diminished cognitive functioning and was suffering from major depressive disorder with psychotic features, panic disorder, opiate dependence in early remission, and personality disorder. (Id. at 22.) Dr. Kieffer further opined that Sonia has markedly poor attention and concentration and an impaired capacity for calculations, conceptual reasoning, and social judgment. The ALJ explained that she gave Dr. Kieffer's opinion little weight because Dr. Kieffer did not provide a vocational opinion, leading the ALJ to conclude that her "assessment is unclear regarding the claimant's ability to perform basic, work-related tasks." (Id. at 23.) The ALJ also noted that the overall record indicates a greater ability to concentrate than Dr. Kieffer's assessment suggests because Sonia watches television, reads, and cares for others, and because she told her primary care physician that medications help her focus. (Id. at 23-24.)

Consulting psychiatrist Dr. Franklin examined Sonia and concluded that she suffers from OCD, PTSD, major depression, and heroin use disorder in remission. (Id. at 23.) The ALJ noted that Dr. Franklin assigned Sonia "marked to extreme limitations in all areas related to mental work functions."[2] (Id. at 24.) The ALJ also gave Dr. Franklin's opinion little weight because she concluded that the limitations he assigned to her are inconsistent with what the ALJ believed to be Sonia's conservative treatment and daily activities. (Id.) The ALJ discounted

---

[2] Dr. Franklin in fact opined that Sonia has "extreme limitations" in understanding and carrying out complex instructions, interacting with co-workers, supervisors, or the public, and responding to changes in the work environment. (A.R. 409-10.)

4

Dr. Franklin's opinions because he examined Sonia only once, and because he reviewed only a subset of her medical records. (Id.)

By contrast the ALJ gave "great weight" to the opinions of two agency consulting psychologists, Drs. Howard Tin and Richard Hamersma, who opined that Sonia can perform unskilled work requiring no interaction with the general public. (Id. at 23.) The ALJ did not address both consulting psychologists' opinions that Sonia has moderate limitations in CPP. Instead, the ALJ explained that she gave the consulting psychologists' opinions great weight because their opinions were consistent with the record, which she found shows that Sonia functions "generally well on a daily basis." (Id.) She also noted that mental status examinations revealed that Sonia has sufficient memory to perform simple tasks and that her relationships with family and friends demonstrate she can interact appropriately with familiar people. (Id.)

At step four the ALJ determined that Sonia does not have any past relevant work to which she could return, but at step five she concluded there are three types of jobs that exist in significant numbers in the national economy that Sonia could perform: hand packer, housekeeping cleaner, and mailroom clerk. (Id. at 25-26.) Accordingly, the ALJ concluded that Sonia is not disabled. (Id. at 26.)

## Analysis

In moving for summary judgment Sonia asserts that the ALJ's decision should be reversed because the ALJ: (1) failed to properly assess the opinions of the agency's own experts; (2) improperly assessed her symptom allegations; and (3)

5

improperly failed to include in the RFC assessment moderate limitations in CPP. In reviewing the ALJ's decision, this court asks only whether the ALJ applied the correct legal standards and whether the decision has the support of substantial evidence. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Substantial evidence means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted). Although this standard of review is deferential and does not permit the court to second-guess the ALJ's weighing of the evidence, the court will reverse where the ALJ's decision rests on "serious factual mistakes or omissions" or where the evidence the ALJ cites does not support her conclusion. *See Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014).

**A.     Consulting Examiners' Opinions**

Sonia argues that the ALJ failed to identify substantial evidence supporting her decision to give only little weight to the opinions of examining clinicians Drs. Kieffer and Franklin, who characterized Sonia as having marked to extreme limitations, especially in the areas of CPP, judgment, and interacting with others. (A.R. 344, 410.) For claims filed before March 27, 2017, including Sonia's, the ALJ analyzes an examining physician's opinion by considering factors including the examining relationship (generally giving more weight to the opinion of a source who has examined the claimant than to one who has not), the frequency of examination,

6

the supportability and consistency of the opinion, and the provider's specialization.[3] *See* 20 C.F.R. § 416.927(c). "An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). The court agrees with Sonia that the ALJ's explanation for discounting Drs. Kieffer's and Franklin's opinions fall short of this standard.

First, in giving Dr. Franklin's opinion little weight the ALJ wrote that the limitations he observed are inconsistent with the nature of the treatment that Sonia received. Specifically, the ALJ characterized Sonia's mental health treatment as "conservative," consisting of medication management "without any documented significant exacerbation of any symptoms" and with limited therapy sessions. (A.R. 22, 24.) The ALJ's finding lacks the support of substantial evidence because the record reveals that Sonia's providers consistently prescribed her medication for anxiety and panic disorder, (id. at 388-401), including psychotropic medication, (id. at 280). Despite such evidence, the ALJ did not explain why she considered medication management of mental health symptoms to be merely conservative. The ALJ also neglected to explore or even acknowledge the reasons why Sonia stopped attending therapy sessions. *See Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) (noting that ALJ may not make negative inferences about claimant's condition from lack of treatment without exploring reasons for lack of care). Sonia reported that

---

[3] The factors that an ALJ applies in considering the opinion of a consulting examining source are substantially the same for claims filed after March 27, 2017. *See* 20 C.F.R. § 416.920c(c).

her anxiety keeps her in her room for 20 hours a day and that she is unable to go out alone. (A.R. 196-97, 199.) Sonia's therapy records reflect that she had difficulty getting through the day because of her rituals and her OCD-driven fear of germs. (Id. at 287, 297.) And Dr. Franklin specifically noted that Sonia has trouble going outside because of her fear of germs and contamination and that her desire to avoid going to doctors explains her lack of psychiatric care. (Id. at 405.) The ALJ's failure to consider how the nature of Sonia's mental impairment contributes to her lack of therapeutic care undermines her characterization of Sonia's course of treatment in discounting Dr. Franklin's opinion. *See Beardsley*, 758 F.3d at 840.

Second, the ALJ explained her decisions to discount both Dr. Franklin's and Dr. Kieffer's opinions with respect to concentration and attention by characterizing them as being inconsistent with Sonia's daily activities. (A.R. 23-24.) The ALJ observed that Sonia "regularly watched television, read books, and cared for others" and that she "functioned well independently." (Id.) Although the record supports the ALJ's finding that Sonia's activities include reading for hours, the ALJ's analysis ignores Sonia's testimony that her daughter no longer allows her to provide child care for her grandchildren because she struggles to leave her room and spends a lot of time crying. (Id. at 37-38.) Given that testimony, it is unclear what the ALJ meant in saying that she "cared for others," especially where the evidence appears to show that Sonia is dependent on others for her own care. Specifically, the record reflects that she self-isolates in her room, (id. at 330), relies on her daughter to ensure that she engages in a daily routine, (id. at 285), has never lived

8

independently, and relies on others to help with her daily activities, (id. at 345). Furthermore, the ALJ did not acknowledge Dr. Franklin's notation that although Sonia watches television and reads, "she can't really focus" while doing those activities. (Id. at 406.) Because the ALJ did not explore the limitations Sonia experiences in engaging in the relevant daily activities and mischaracterized the record in stating that she functions well independently, the ALJ's reliance on Sonia's daily activities does not support her decision to discount the consulting examiners' opinions. *See Brown v. Colvin*, 845 F.3d 247, 253-54 (7th Cir. 2016) (reversing where ALJ misrepresented claimant's daily activities); *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013) (reversing where ALJ failed to account for limitations in claimant's ability to perform daily activities).

Third, the ALJ explained that she discounted Dr. Kieffer's opinion about Sonia's attention limitations because there is one record in which Sonia's primary care physician noted that she reported that medication "helped her focus on tasks." (A.R. 24.) But the ALJ did not consider how that one report contrasts with the remainder of the record, including Dr. Franklin's report, which post-dates the primary care physician's note by seven months. Dr. Franklin noted that despite taking medication to address her attention deficits Sonia continues to have poor concentration. (Id. at 408.) Accordingly, the single reference to medication improving (but not resolving) Sonia's attention limitations is insufficient to support the ALJ's decision to give little weight to Dr. Kieffer's observations and opinion that Sonia has marked concentration problems. (Id. at 344.) The ALJ also faulted

9

Dr. Kieffer for not providing her opinion in vocational terms, but a physician is not required to submit a function-by-function evaluation in order to merit the ALJ's consideration. *See Byndum v. Berryhill*, No. 17 CV 01452, 2017 WL 6759024, at *3 (N.D. Ill. Dec. 15, 2017) (stating that it is "inappropriate" for an ALJ to disregard a physician's opinion because it does not evaluate the claimant on a function-by-function basis).

These shortcomings in the ALJ's explanation are especially troubling given her decision to give greater weight to the opinions of two consulting physicians, who merely reviewed the paper record, than she did to the two examining clinicians. Although as a general rule an ALJ is not required to credit the opinion of an agency examining physician over the opinion of a consulting physician who merely reviews the paper record, "rejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled . . . can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step." *Beardsley*, 758 F.3d at 839. Here the ALJ discounted Dr. Franklin's opinion in part because he only examined Sonia once, but then gave great weight to the opinions of two consulting physicians who never examined her at all. She also discounted Dr. Franklin's opinion because he reviewed only a subset of her records, while giving great weight to the consulting physicians' opinions who also reviewed only a subset of the record. In particular, the consulting physicians provided their opinions in April 2015 and February 2016, respectively, meaning they did not have access to notes from Sonia's primary care physician confirming her anxiety and panic attacks

10

or to Dr. Franklin's input. Given these discrepancies, together with the previously identified deficiencies in the ALJ's explanation, the court concludes that the ALJ's reasons for discounting the opinions of the examining psychiatrist and psychologist lack the support of substantial evidence.

**B.     Symptom Assessment**

Sonia argues that the ALJ's assessment of her mental health symptoms is "patently wrong." *See Craft*, 539 F.3d at 680 (reversing where two of three reasons underlying credibility assessment unsupported). The reasons the ALJ gave for discounting Sonia's symptoms are essentially the same reasons she gave for discounting the examining clinicians' opinions. After setting out the kind of boilerplate language that the Seventh Circuit has dismissed as "meaningless," *see Parker v. Astrue*, 597 F.3d 920, 921-22 (7th Cir. 2010), the ALJ simply wrote that Sonia's symptom description is undercut by her conservative treatment regimen and her daily activities of reading, watching television, and caring for her granddaughters, (A.R. 23). As explained above, it is unclear what greater treatment the ALJ expected for a person with Sonia's symptoms, and the ALJ fails to explore the reasons why Sonia did not continue with in-person therapy. The ALJ does not explain how watching television is inconsistent with attention deficits or acknowledge Dr. Franklin's note that Sonia has trouble focusing on reading. Nor does the ALJ explain how being able to read while self-isolating in one's room is consistent with being able to concentrate in a workplace, particularly for a person with severe anxiety, OCD, and panic disorder. As for caring for her grandchildren,

11

the ALJ ignored Sonia's testimony that her daughter no longer allows her to care for her granddaughters because of her mental health symptoms.

The ALJ also found that Sonia's testimony is undercut by evidence that she "sought to become a paid caretaker of her aunt," with whom Sonia lived. (A.R. 23.) But the Seventh Circuit has made clear that a desire to work is not necessarily consistent with an ability to work and the fact that a claimant expresses a desire to work is "simply unenlightening." *Cullinan v. Berryhill*, 878 F.3d 598, 604 (7th Cir. 2017). The ALJ points to no evidence that Sonia was successful in being hired to serve as her aunt's caregiver. Finally, the ALJ's symptom assessment also includes the statement, "the claimant's record noted [noncompliance] with methadone, as well as . . . illicit drug use." (A.R. 23.) It is unclear how a claimant's struggle to maintain sobriety is inconsistent with or undermines symptoms including severe attention and concentration problems, and the ALJ does not offer any explanation to support this conclusion. In short, the ALJ's reasons for discounting Sonia's symptoms are not supported by substantial evidence.

**C.     CPP Limits**

In the interest of completeness, the court addresses Sonia's argument that the ALJ failed to include moderate CPP limits in the RFC assessment. Specifically, Sonia faults the ALJ for assigning great weight to the opinion of two consulting physicians who described her as having moderate CPP limits, but then assigning only mild CPP limits without explaining this disconnect. Sonia is correct that the ALJ failed to explain why she discarded an important aspect of the consulting

12

physicians' opinions, who assessed Sonia as having moderate limitations in maintaining concentration for extended periods, (A.R. 66, 88), while purportedly giving their opinions great weight, (id. at 23). The government counters that the ALJ's failure to address this discrepancy has little significance because the consulting physicians found that Sonia can work despite her moderate concentration limitations. (R. 19, Def.'s Resp. at 12.) But this argument ignores the VE's testimony that a hypothetical person with the RFC that the ALJ assigned, who also has moderate limitations in CPP for extended periods, would not be able to perform any jobs.[4] (A.R. 54-55.) Based on that evidence, had the ALJ adopted the consulting physicians' opinions with respect to Sonia's CPP limitations, the outcome of her decision may well have been different. Accordingly, the ALJ's error in failing to explain why she assigned Sonia only mild limitations in CPP after according great weight to the consulting physicians' opinions cannot be characterized as harmless. *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (holding that error is not harmless if ALJ may have reached a different conclusion absent that error).

---

[4] Although neither party raises the issue, the court also notes that the ALJ adopted the VE's opinion that "housekeeping cleaner" would be an appropriate job for Sonia without considering whether she could successfully perform this work given her OCD-related fear of germs.

## Conclusion

For the foregoing reasons, Sonia's motion for summary judgment is granted, the Commissioner's is denied, and the case is remanded.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**